UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Richard Harter,

        Plaintiff,

vs.

St. Mary's Duluth Clinic Health System
and Essentia Health,

        Defendants.

Case Type:  Employment

**COMPLAINT**
**JURY TRIAL DEMANDED**

Court File No. _____

Plaintiff by his attorneys, Fabian May & Anderson, PLLP, brings this action for damages and other legal and equitable relief for Defendants' violations of laws relating to employment.  Plaintiff states the following as his claims against Defendants:

## JURISDICTION AND VENUE

1.    This action arises under Minn. Stat. § 181.64 and Minnesota common law.

2.    Jurisdiction over this case is proper pursuant to the Court's diversity jurisdiction, 28 U.S.C. § 1332.

3.    A substantial part of the events described herein occurred in Minnesota, and Defendants conduct business within the state of Minnesota.

## PARTIES

4.    Plaintiff Richard Harter ("Plaintiff") is an individual who resides is in the state of Michigan.

5.      Defendant St. Mary's Duluth Clinic Health System ("SMDC") is a Minnesota Non-Profit Corporation with its principal place of business in Duluth, Minnesota.

6.      Defendant Essentia Health is a Minnesota Non-Profit Corporation with its principal place of business in Duluth, Minnesota.

7.      SMDC now does business as "Essentia Health," and has merged or is merging operations with Essentia Health and/or Essentia Health's subsidiaries. Upon information and belief, Essentia Health is SMDC's parent company and has been at all relevant times herein.

## FACTS RELEVANT TO ALL COUNTS

1.      In August 2009, Plaintiff lived in the state of Michigan.

2.      As of August 2009, Plaintiff had over 15 years of experience as an Employee Relations Specialist and had served as lead negotiator for various union bargaining units for several years.

3.      In or around August 2009, SMDC extended a job offer to Plaintiff for a position as an Employee Relations Specialist in Duluth, Minnesota.

4.      Also in or around August 2009, the International Federation of Professional and Technical Engineers ("IFTPE") extended a job offer to Plaintiff for a position as an Employee Relations Specialist in California.

5.      On August 19, 2009, Plaintiff spoke via telephone with Sandy Shea ("Shea"), a human resources representative for SMDC. During the August 19 phone call, Plaintiff told Shea he had decided to accept IFTPE's offer and reject SMDC's offer.

2

Plaintiff explained to Shea his reasoning for not accepting SMDC's offer. Plaintiff told Shea he chose the IFTPE position over SMCD primarily because his job responsibilities at IFTPE would include senior-level responsibilities, such as serving as lead negotiator for labor disputes, whereas the SMDC job offer did not include these job responsibilities. Harter further explained that such senior-level assignments were very important and a job that did not include senior-level responsibilities would constitute a step down in terms of his responsibilities.

6.      On August 20, 2009, Plaintiff received a phone call from Jerry Zanko ("Zanko"), SMDC's Manager of Employee Relations. Plaintiff told Zanko his reasons for not accepting the SMDC position. In response, Zanko told Plaintiff he would increase the salary SMDC was offering for the position and promised Plaintiff his position with SMDC would include senior-level assignments. Specifically, Zanko told Plaintiff:

- That Plaintiff would assume lead negotiator functions shortly after hire;

- That Plaintiff's position would include the assignments of a recently-departed employee, Gary Diamond, whose assignments involved ongoing negotiations; and

- That Plaintiff's position would include all negotiations between United Steel Workers ("USW") and SMDC's Pine Medical Center.

7.      At the time Zanko made the statements listed in paragraph 6, Zanko knew the following:

- That it was not possible for Zanko to ensure Plaintiff would be assigned lead negotiator functions as Zanko had guaranteed;

- That Gary Diamond's assignments would not involve any negotiations until 2010 when the contracts were set to expire; and

- That the negotiations between USW and Pine Medical Center had historically been handled by outside counsel, so Plaintiff would not be leading the negotiations.

8.    In reliance on Zanko's representations, Plaintiff accepted the position with SMDC, put his Michigan home on the market, and began the process of moving his family to Duluth, Minnesota.

9.    Plaintiff reported for work at SMDC on September 28, 2009.

10.    From September 28, 2009 to October 23, 2009, SMDC did not provide Plaintiff any work assignments and did not provide Plaintiff access to key systems necessary to perform his job. Plaintiff repeatedly asked Zanko for work assignments during this time, but Zanko stated he was too busy to assign Plaintiff any work. Plaintiff also learned during this time that the USW negotiations had been assigned to outside counsel and that they were not going to be assigned to him in any capacity.

11.    On October 14, 2009, Plaintiff asked Zanko if his job was secure. Zanko assured Plaintiff it was.

12.    On October 16, 2009, at Plaintiff's request, Zanko contacted Plaintiff's prospective landlord in Duluth and vouched for the stability and security of Plaintiff's employment. Zanko's representation enabled Plaintiff and his spouse to enter into a six-month lease for a condo in Duluth.

13.   On or about October 21, 2009, Plaintiff first received access to the "Lacoda" system, a computer program necessary for performing his promised job duties.

14.   On or about October 23, 2009, Zanko asked Plaintiff if he was planning to quit his job.  Zanko stated that a co-worker told him Plaintiff was not happy and was interviewing for other jobs.  Plaintiff denied these allegations and listed a number of reasons why the allegations could not reasonably be believed, including but not limited to the fact that he had just signed a six month lease for a condo in Duluth.

15.   On or about October 23, 2009, after the meeting with Zanko referenced in paragraph 14, Plaintiff was approached by another Employee Relations Specialist, Ms. Bourassa, who told him that she had told Zanko that she did not think Plaintiff was happy and suggested ways to address that, but that she had not told Zanko that Plaintiff was interviewing for other jobs.

16.   On or about October 23, 2009, after the discussion with Ms. Bourassa referenced in paragraph 15, Plaintiff was assigned a large number of tasks, none of which were senior-level assignments.  Plaintiff commenced working on those assignments.

17.   On or about October 26, 2009, Zanko once again asked Plaintiff if he was planning to stay with the company.  Plaintiff responded that he planned to stay and suggested to Zanko that they meet with Ms. Bourassa to clear up the misinformation about his alleged desire to leave the company.  Plaintiff also inquired about whether he would be allowed to act in the lead negotiator capacity.  Zanko replied that Plaintiff might get to work as "second chair" in late 2010.  Working "second chair" is not comparable to the responsibility of leading negotiations.

18.     On or about October 30, 2009, Plaintiff was granted access to "VIP Docview," another computer program necessary for performing his promised job duties.

19.     On or about October 30, 2009, Zanko told Plaintiff that he needed to think over the weekend about whether or not he wanted to be working at SMDC.

20.     On Saturday, October 31, 2009, Plaintiff and his wife drove 13 hours back to the Detroit, Michigan area to pick up the rest of their belongings and furniture and move them to the condo in Duluth. Zanko was fully aware that this was Plaintiff's plan for the weekend. Plaintiff had the moving truck loaded on Sunday, November 1, 2009.

21.     The morning of Monday, November 2, 2009, Zanko called Plaintiff and terminated his employment.

## COUNT I

### FRAUDULENT INDUCEMENT IN VIOLATION OF MINN. STAT. § 181.64.

22.     By reference hereto, Plaintiff hereby incorporates the paragraphs above.

23.     Minn. Stat. § 181.64 provides in relevant part:

It shall be unlawful for any person, partnership, company, corporation, association, or organization of any kind, doing business in this state, directly or through any agent or attorney, to induce, influence, persuade, or engage any person to . . . change from any place in any state, territory, or country to any place in this state, to work in any branch of labor through or by means of knowingly false representations . . . concerning the kind or character of such work . . . .

24.     Defendants, through Zanko, induced, influenced, persuaded, and engaged Plaintiff to move from Michigan to Minnesota by means of knowingly false representations concerning the kind and character of the work Plaintiff was to perform.

25.     Plaintiff accepted the position with Defendants and moved from Michigan to Minnesota in reasonable reliance on Defendants' knowingly false representations.

26.     As a direct and proximate result of Defendants' conduct in violation of Minn. Stat. § 181.64, Plaintiff has suffered and continues to suffer loss of past and future income, mental anguish, emotional distress, and other damages in an amount in excess of $75,000.

## COUNT II

### FRAUDULENT MISREPRESENTATION

27.     By reference hereto, Plaintiff hereby incorporates the paragraphs above.

28.     Defendants, through Zanko, made knowingly false representations, material to the nature of the Employee Relations Specialist position offered to Plaintiff, with the purpose of inducing Plaintiff to accept the position.

29.     In reliance on Defendants' knowingly false representations, Plaintiff accepted the position with Defendants and rejected a competing job offer from IFTPE.

30.     As a direct and proximate result of Defendants' conduct in violation of Minn. Stat. § 181.64, Plaintiff has suffered and continues to suffer loss of past and future income, mental anguish, emotional distress, and other damages in an amount in excess of $75,000.

## COUNT III

### PROMISSORY ESTOPPEL

31. By reference hereto, Plaintiff hereby incorporates the paragraphs above.

32. Defendants, through Zanko, made a clear and definite promise that Plaintiff's job duties would include senior-level assignments, including leading negotiations, working Gary Diamond's files, and leading the negotiations between USW and SMD's Pine Medical Center, with the intent to induce Plaintiff's reliance.

33. Plaintiff accepted the position with Defendants in detrimental reliance on Defendants' promise.

34. Defendants failed to abide by their promise.

35. As a direct and proximate result of Defendants' failure to fulfill its promise, Plaintiff has suffered and continues to suffer damages in an amount in excess of $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Richard Harter prays for judgment against Defendants St. Mary's Duluth Clinic Health System and Essentia Health as follows:

A.      For all relief available under Minn. Stat. § 181.64;

B.      For all relief available for Plaintiff's promissory estoppels claim; and

C.      For such other and further relief and the court deems just and equitable.

Dated: _8 - 11 - 11_

FABIAN MAY & ANDERSON, PLLP

John A. Fabian, #13482X
David H. Redden, #391496
1285 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 353-3340
ATTORNEYS FOR PLAINTIFF